IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOY DAVIS,

        Plaintiff,

v.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Civ. No. 6:15-cv-02429-CL

OPINION & ORDER

MARK D. CLARKE, Magistrate Judge.

Plaintiff Joy Davis ("Plaintiff"), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying disability benefits under Title II of the Social Security Act. For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

## BACKGROUND

Plaintiff was born on November 22, 1968, has at least a high school education, and is able to communicate in English. Tr. 26. She worked as a medical assistant. *Id.* Plaintiff filed her initial claim for disability on October 26, 2011, alleging disability due to chronic back pain, arthritis, and neuropathy beginning on June 13, 2011. Tr. 65. Plaintiff was insured under Title II of the Social Security Act through December 31, 2016. Tr. 17.

Plaintiff's claim was denied initially and upon reconsideration. Tr. 15. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a video hearing and testified before ALJ Marilyn S. Mauer on May 7, 2014. *Id.* On July 25, 2014, the

ALJ determined that Plaintiff was not disabled. Tr. 28. On October 26, 2015, the Appeals Council denied Plaintiff's subsequent request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that

point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not performed substantial gainful activity since the original alleged onset date of June 13, 2011. Tr. 17. At step two, the ALJ found Plaintiff had the following severe impairments: chronic pain status post cervical fusion times two and lumbar micorodisectomy; obesity; cervical radicular pain intp the arms, right greater than left; and osteoarthritis of the right hip. *Id.* At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. Tr. 19.

The ALJ then assessed Plaintiff's RFC and determined that Plaintiff could perform light exertion work with lifting and carrying of twenty pounds occasionally and ten pounds frequently. Tr. 20. Plaintiff can stand, walk, and sit for six hours of an eight-hour workday for a combined total of eight hours of activity, but will require the option to change from seated to standing position every twenty minutes while still performing essential tasks. *Id.* Plaintiff can never climb ladders, ropes, or scaffolds. *Id.* She can never be exposed to hazards such as unprotected heights and large moving equipment. *Id.* She can occasionally climb ramps or stairs. *Id.* She can occasionally stoop, crouch, kneel, and crawl. *Id.* She can never reach overhead. *Id.* She can perform frequent handling, fingering, and feeling with the right upper extremity. *Id.* Plaintiff should avoid concentrated exposure to cold temperatures. *Id.* Due to the impact of her pain and pain medications, Plaintiff can understand, remember, and carry out only simple instructions. *Id.*

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work. Tr. 26. At step five, the ALJ found that Plaintiff had the RFC to perform work as a counter clerk, information travel clerk, and protective clothing issuer. Tr. 27. Accordingly, the ALJ found Plaintiff not disabled. Tr. 28.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). In reviewing the Commissioner's alleged errors, this court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff argues the ALJ erred by: 1) improperly rejecting medical opinion evidence; 2) improperly assessing Plaintiff's severe impairments at step two; 3) improperly rejecting Plaintiff's subjective symptom testimony; and 4) making an incorrect finding at step five.

## I. Medical Opinion Evidence

Plaintiff asserts that the ALJ improperly rejected the opinions of Dr. Michael Henderson, D.O., an examining physician, and Dr. Rose Kenny, M.D., Plaintiff's former treating physician.

The opinion of a treating physician is generally accorded greater weight than the opinion of an examining physician and the opinion of an examining physician is accorded greater weight than the opinion of a reviewing physician. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). To reject the uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Sufficient reasons for rejecting an examining physician's opinions may include the physician's reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

When a treating or examining physician's opinion conflicts with other evidence in the record, an ALJ may only reject the opinion for specific, legitimate reasons supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

### A. Dr. Henderson

As previously noted, the ALJ found that Plaintiff could stand, sit, and walk "each six hours of an eight-hour workday for a combined total of eight hours of activity." Tr. 20. Dr. Henderson examined Plaintiff in January 2014. Tr. 547. In his narrative report, Dr. Henderson opined that Plaintiff should be limited to sitting for 90 minutes at a time, but eight hours per day with normal breaks. Tr. 550. Dr. Henderson stated that Plaintiff could stand or walk for one hour at a time and six hours per day in combination. *Id.* On the check form that accompanied the report, Dr. Henderson similarly reported that Plaintiff could sit for 90 minutes at a time and

stand or walk for one hour at a time. Tr. 553. He reported that Plaintiff could sit for eight hours and stand or walk for three hours each during an eight-hour workday. *Id.* The ALJ gave Dr. Henderson's opinion "full weight," but assessed greater lifting, carrying, postural, manipulative, and environmental restrictions than Dr. Henderson found. Tr. 25-26.

Plaintiff asserts that the ALJ erred by giving full weight to Dr. Henderson's opinion, but then concluding that Plaintiff could stand and walk for six hours each, rather than the three hours each identified in Dr. Henderson's report. The Commissioner asserts that the Court may infer that the ALJ considered the narrative report to be controlling "[i]n light of the differences between the narrative and the checkbox." Def. Brief. at 6. As Plaintiff points out, however, there is no meaningful difference between the two reports: the narrative states that Plaintiff could stand or walk for six hours "in combination," while the checkboxes report that she could stand or walk for three hours each. Tr. 550, 553.

The Commissioner asserts that any error was harmless. An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (internal quotation marks and citations omitted). The court must "look at the record as a whole to determine whether the error alters the outcome of the case." *Id.* In this case, the VE hypothetical stated that Plaintiff could "sit, stand, and walk for six hours in an eight-hour day but requires the option to alternate positions between sitting and standing every 20 minutes and also requires the usual breaks at two-hour intervals." Tr. 58. This is consistent with Dr. Henderson's report that Plaintiff could stand or walk for six hours in combination. Any error in assessing or incorporating Dr. Henderson's report into the RFC was therefore harmless.

## B. Dr. Kenny

Dr. Kenny was Plaintiff's treating physician from 2003 until 2011. Tr. 517. Plaintiff stopped seeing Dr. Kenny for two years before returning to her in 2014 for a "second opinion" on Plaintiff's disability claim after an examining physician recommended that Plaintiff go back to work. Tr. 50, 615. Dr. Kenny opined that Plaintiff could occasionally lift or carry up to 20 pounds. Tr. 615. Dr. Kenny stated that Plaintiff could never sit, stand, walk, drive, bend, crawl, climb, or reach and could only occasionally squat. *Id.* Dr. Kenny concluded that Plaintiff was "permanently disabled." *Id.* Plaintiff's representative submitted interrogatories to Dr. Kenny in May 2014, in which Dr. Kenny diagnosed Plaintiff with peripheral neuropathy, degeneration of her cervical disc, and osteoarthritis. Tr. 650-51. Dr. Kenny opined that Plaintiff could not sit for more than thirty minutes before needing to lie down and she "cannot work and needs disability." Tr. 651.

The ALJ gave little weight to Dr. Kenny's opinion, noting the lack of support for her findings in the clinical record, poor documentation, conflict with other medical sources, and her apparent reliance on Plaintiff's self-report. Tr. 24-25. The ALJ noted that Dr. Kenny "identified several impairments for which she did not conduct workup and which no other acceptable medical source has endorsed." Tr. 25.

An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Dr. Kenny diagnosed chronic fatigue syndrome based on Plaintiff lying down for sixteen hours per day and still being tired. Tr. 615. Dr. Kenny diagnosed anxiety disorder, depression, and suicidal ideation based on Plaintiff's "current medical situation," and vague suicidal ideation, but noted that Plaintiff's mood and affect were

"appropriate." Tr. 615, 617. Dr. Kenny opined that Plaintiff could "never" stand, walk, sit, or drive, but observed normal gait, balance, and motor skills. Tr. 615, 617. Dr. Kenny's opinion was brief, conclusory, and unsupported and the ALJ properly assigned little weight to it.

Plaintiff also contends that the ALJ erred in formulating her RFC based on alleged errors in weighing the medical opinion evidence. As the Court has concluded that the ALJ properly assessed the medical opinion evidence, it is not necessary to separately address Plaintiff's argument as to the RFC.

## II. Step Two Analysis

Plaintiff contends that the ALJ erred by declining to find that peripheral neuropathy was a severe impairment at step two of the analysis, which subsequently led to errors in formulating Plaintiff's RFC.

At step two, a claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments. *Stout*, 454 F.3d at 1052. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. The Commissioner "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment." *Id.*

In this case, the ALJ noted that Dr. Kenny "'diagnosed' [Plaintiff] with several physical impairments the medical records do not support," including chronic fatigue, peripheral neuropathy, and thoracic outlet syndrome. Tr. 18. The ALJ declined to include peripheral neuropathy as a medically determinable impairment because "Dr. Kenny failed to provide workup for any of these conditions consistent with what is required to be considered by the Social Security Administration and there is electrodiagnostic testing without findings consistent

with peripheral neuropathy." *Id.* As previously discussed, the ALJ properly assigned little weight to Dr. Kenny's opinion, based on its brevity and lack of supporting clinical findings. Laboratory results showed "no NCS evidence of a median or ulnar neuropathy on the right." Tr. 507. Reviewing physicians Dr. Ward Dickey and Dr. Neal Berner both noted that Plaintiff claimed neuropathy, but concluded that Plaintiff had disorders of the back, muscle, ligament, and fascia. Tr. 65-81.

The ALJ appropriately excluded peripheral neuropathy at step two.

### III. Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by rejecting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina*, 674 F.3d at 1112. At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim*, 763 F.3d at 1163. Factors the ALJ must consider when making a credibility determination include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medications, and relevant character evidence.[1] *Id.*

---

[1] The Court notes that the Social Security Administration recently "eliminate[ed] the use of the term 'credibility' from [its] sub-regulatory policy" to "clarify that subjective symptom evaluation is not an examination of an

An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, or a claimant's daily activities. *Tommasetti*, 533 F.3d at 1039. A claimant's daily activities may undermine her allegations if the claimant spends a substantial part of her day engaged in activities that are transferrable to a work setting or if the activities contradict her testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some symptoms, but found Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms to be not entirely credible. Tr. 21.

The ALJ found several inconsistencies in Plaintiff's description of her symptoms. In her function report, Plaintiff stated that she could walk and pay attention for "as long as needed." Tr. 252. As the ALJ noted, this was not consistent with Plaintiff's testimony at the hearing, where she testified that she could not walk for more than thirty minutes and described difficulty with concentration. Tr. 21, 41, 45-46.

Plaintiff reported difficulty sleeping due to swelling in her arms. Tr. 41-42. Plaintiff reported that her left hand swelled on a daily or weekly basis and that her right hand was worse. Tr. 46-47. Plaintiff testified that the condition has persisted for between a year and half and two years. Tr. 47. As the ALJ noted, Plaintiff's claims were unsupported or contradicted by the medical evidence. Tr. 22. An examination in March 2013 noted no edema of the extermities. Tr. 525. Also in March 2013, Plaintiff herself described the swelling issue as "infrequent." Tr. 286. In January 2014, Dr. Henderson's examination found no swelling of the hands. Tr. 549.

---

individual's character." SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14167 (Mar. 16, 2016) (superseding SSR 96-7p). Plaintiff acknowledges that this ruling post-dates the ALJ's opinion. The changes to the agency's practice articulated in SSR 16-3p could not apply to the ALJ decision in this case because 42 U.S.C. § 405(g) does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking. *Bowen v. Georgetown Hosp.*, 488 U.S. 204, 214-15, n.3 (1988); *Garner v. Colvin*, 626 F. App'x 699, 701 (9th Cir. 2015).

Plaintiff testified that she didn't sleep well at night, was sleepy "most of the day," and was frequently awake at 1:00 a.m. Tr. 41. Plaintiff later testified that despite not sleeping at night she was most alert in the mornings. Tr. 43.

An ALJ is also permitted to consider instances where the claimant failed to give maximum effort during examinations. *Thomas*, 278 F.3d at 959; *Conner v. Colvin*, ___F. App'x___, No. 14-17194, 2017 WL 24621, at *1 (9th Cir. Jan. 3, 2017). In this case, when Plaintiff was examined by Dr. Henderson, he found the exam "unreliable," and that she gave less than her full effort during strength examinations. Tr. 547-48. Dr. Henderson noted that Plaintiff's "[s]ubjective complaints of pain seem out of proportion to the objective findings." Tr. 550. The ALJ tied these inconsistencies directly into her credibility determination. Tr. 22, 25.

The ALJ also noted inconsistencies between Plaintiff's claimed limitations and her activities of daily living. Although a claimant need not vegetate in a dark room in order to qualify for benefits, the ALJ may still consider activities of daily living in making a disability determination. *Molina*, 674 F.3d at 1112-13. Even when a claimant's activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id* at 1113. In this case, the ALJ noted that Plaintiff reported being able to do household chores, go shopping, and engage in physical exercise. Tr. 21-22. The ALJ reasonably concluded that such activities were not consistent with Plaintiff's claim that she must spend most of the day reclining. Tr. 22.

Although Plaintiff puts forth an alternative interpretation of the record, the Commissioner's interpretation is rational and the Court may not substitute its judgment for that of the Commissioner. *Batson*, 359 F.3d at 1193. The ALJ gave sufficiently specific, clear, and convincing reasons for finding that Plaintiff's testimony was not fully credible. Accordingly, it

is not necessary for the Court to address Plaintiff's related claim that the ALJ erred in formulating the RFC based on an improper credibility finding.

## IV. Step Five Findings

At step five, the Vocational Expert ("VE") identified three occupations that Plaintiff might be able to perform based on the ALJ's hypothetical: counter clerk, information travel clerk, and protective clothing issuer. Tr. 27. Plaintiff asserts that the ALJ erred as to all three positions.

### A. Reasoning Level

"When there is an apparent conflict between the vocational expert's testimony and the DOT ["Dictionary of Occupational Titles"]—for example, expert testimony that a claimaint can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). The ALJ must ask the expert to explain the conflict and then determine if the explanation is reasonable before relying on the VE's testimony to reach a disability determination. *Id.* An ALJ's failure to resolve an apparent inconsistency may preclude a reviewing court from determining if the ALJ's opinion is supported by substantial evidence. *Id.*

Occupations described by the DOT include a reasoning level ranging from 1, which requires the least reasoning, to 6, which requires the most. *Zavalin*, 778 F.3d at 846. In *Zavalin*, the Ninth Circuit held that a claimant who was limited to "simple, repetitive tasks" was not able to meet the requirements of an occupation that required Level 3 Reasoning.[2] *Id.* at 846-47. The court held that the plaintiff's limitation was more consistent with Level 2 Reasoning, which requires that the individual be able to "[a]pply commonsense understanding to carry out detailed

---

[2] Level 3 Reasoning requires the person to: "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015).

but uninvolved written or oral instructions," and "[d]eal with problems involving a few concrete variables in or from standardized solutions." *Id.* at 847.

In this case, Plaintiff's RFC indicates that she can "understand, remember, and carry out only simple instructions." Tr. 20. This limitation was included in the ALJ's hypothetical question to the VE. Tr. 59. One of the positions identified by the VE was Information/Travel Clerk, DOT 237.367-018., *available at* 1991 WL 672187. Tr. 27. As described by the DOT, Information/Travel Clerk requires Level 4 Reasoning, which the Commissioner concedes is inconsistent with Plaintiff's RFC.

Counter Clerk, DOT 249.366-010, *available at* 1991 WL 672323, and Protective Clothing Issuer, DOT 222.687-046, *available at* 1991 WL 672139, both require Level 2 Reasoning. Plaintiff asserts, however, that the Level 2 Reasoning requirement of being able to carry out "detailed but uninvolved written or oral instructions" is inconsistent with an RFC limiting Plaintiff to "only simple instructions."

Courts within this district have held that an RFC limiting a claimant to "simple, routine instructions," or "simple, short instructions" is not inconsistent with Level 2 Reasoning, noting that "detailed but uninvolved" necessarily excludes complex instructions. *See Barnes v. Colvin*, No. 6:14-cv-01906-HZ, 2015 WL 8160669, at *4-5 (D. Or. Dec. 7, 2015) (collecting cases). The Court finds the reasoning put forth in *Barnes* persuasive. There is no conflict between an RFC requiring "only simple instructions" and occupations requiring Level 2 Reasoning.

### B. Counter Clerk

At the hearing, the VE identified Counter Clerk as a potential occupation and gave a DOT number of 259.366-010. Tr. 59. The ALJ used the same DOT number in her ruling. Tr. 27. As the parties have pointed out, this is not the correct DOT number. Rather, Counter Clerk

is found at DOT 249.366-010. Plaintiff contends that this error justifies remand because it is not clear which "counter clerk" the ALJ and VE were referencing.

The description of the Counter Clerk position described at DOT 249.366-010 matches the position described by the VE in terms of the strength level and the SVP. DOT 249.366-010, *available at* 1991 WL 672323, Tr. 59. The difference between DOT 249.366-010 and the DOT number given by the VE was a single digit. This was a typographical error or slip of the tongue and "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (internal quotation marks and citation omitted).

### C. Protective Clothing Issuer

The VE also identified Protective Clothing Issuer, DOT 222.687-046, *available at* 1991 WL 672139, as a potential occupation. As described in the DOT, Protective Clothing Issuer requires frequent climbing, stooping, crouching, and crawling. This is inconsistent with Plaintiff's RFC, which limited Plaintiff to only occasional stooping, crouching, crawling, and climbing stairs or ramps. Tr. 20. The VE testified that the occupation has a sit/stand option, but did not address the apparent conflict between the description in the DOT and the hypothetical limitations. Tr. 60.

The Commissioner contends that any error that resulted from the inclusion of Protective Clothing Issuer or Information/Travel Clerk was harmless because even if those jobs are eliminated there are enough Counter Clerk jobs in both in Oregon and in the national economy to constitute "significant numbers" and satisfy the Commissioner's burden at step five. The Ninth Circuit has determined that a job exists in "significant numbers" when there are 2,500 in the claimant's state and 25,000 nationally. *Gutierrez v. Comm'r*, 740 F.3d 519, 527-29 (9th Cir. 2014); *see also Martinez*, 807 F.2d at 775 (a job exists in significant numbers if there are

between 3,750 and 4,250 such jobs). In this case, the VE testified that there 83,400 counter clerk positions in the national economy. Tr. 59. Accordingly, any error from including the Protective Clothing Issuer and Information/Clerk positions was harmless because the ALJ identified a job that exists in significant numbers.

## CONCLUSION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED.

It is so ORDERD and DATED this \_\_\_11\_\_\_ day of April, 2017.

MARK D. CLARKE
United States Magistrate Judge